COLEMAN v. OWENS.

Opinion delivered March 19, 1923.

1. APPEAL AND ERROR—CONCLUSIVENESS OF COURT'S FINDING.—The court's finding that a broker did not warrant the financial condition of a proposed purchaser of stock, being supported by substantial evidence, is conclusive.

2. SALES—CONTRACT HELD A SALE, NOT AN OPTION.—Where each party to a contract of sale of a stock of merchandise at so much on the dollar, the total price to be determined by invoice, deposited in a bank, money to be forfeited to the other in case he should back out, the transaction constituted a sale, and not an option to buy; the forfeit being in the nature of earnest money to bind the contract.

Appeal from Benton Circuit Court; *W. A. Dickson,* Judge; affirmed.

*Sullins & Ivie,* for appellant.

. Undisputed testimony shows that appellee was authorized only to sell to or procure a purchaser able to pay for stock of merchandise and that he failed to do so. Case not controlled by *Moore* v. *Irwin,* 89 Ark. 289, since appellee expressly warranted financial ability of purchaser. Express warranty defined. ' *Cornish* v. *Friedman,* 94 Ark. 282. Even if no express warranty of financial ability of purchaser appellees did not effect a sale at all. *Reeder* v. *Epps,* 112 Ark. 566. *White* v. *Fresh,* 106 Fed. 290. No more than as option or agreement to sell. *McWilliams* v. *Philadelphia Co.,* 159 Pa. 142, 28 Atl. 220; *Brickeller* v. *Atlas Assurance Co.,* 101 Pac. 16; *Swift* v. *Erwin,* 148 S. W. 267; *Indiana & Ark. Lbr. Mfg. Co.* v. *Pharr,* 82 Ark. 573; 9 C. J. 603, sec. 90; 4 R. C. L. 315, sec. 35; note 43 L. R. A. (N. S.) 91; *Hansom* v. *Blanchard,* 117 Me. 501, 105 Atl. 291, 3 A. L. R. 545; case should be decided as was *Howell* v. *Bennett,* 145 S. W. 535.

*Duty & Duty* and *John W. Nance,* for appellee.

The court's finding as conclusive as verdict of jury. *Boqua* v. *Brady,* 90 Ark. 512; *Midland Valley Ry.* v. *Monroe Bolt Co.,* 91 Ark. 108; *Warren* v. *Nix,* 97 Ark. 374. No testimony to warrant conclusion that purchaser not able to consummate contract, even had there been an express warranty, and there was none. The sale was effected. *Fagon* v. *Falkner,* 5 Ark. 161; *Chamblee* v. *McKenzie,* 31 Ark. 155; *Gans* v. *Holland,* 37 Ark. 483; *Shall* v. *Harrington,* 54 Ark. 305; *Lynch* v. *Daggett,* 62 Ark. 592; *Priest* v. *Hodges;* 90 Ark. 131; *Biggers* v. *Johnson,* 106 Ark. 89; *Emerson* v. *Stevens Grocery Co.,* 95 Ark. 426; *Hale* v. *Matterson,* 107 Ark. 230.

The evidence supports the court's finding, and it will not be disturbed. *Williams* v. *Ry.,* 103 Ark. 401; *Hutchinson* v. *Gorman,* 71 Ark. 305. Case is controlled by decision in *Moore* v. *Irwin,* 89 Ark. 289. The executory contract of purchase having been entered into, it was the business of the vendor to get the purchase money or

enforce contract of sale. *Moore* v. *Irwin,* 89 Ark. 289; *Pinkerton* v. *Hudson,* 87 Ark. 506; 19 Cyc. "Factors & Brokers," 207.

HUMPHREYS, J.   This is an appeal from the Benton Circuit Court, challenging the right of appellee to recover commissions for negotiating a sale of the stock of merchandise owned by appellant to one Hughes. The material issues presented by the pleadings in the trial court and upon which the case turned were, first, whether appellee expressly warranted the financial ability of the proposed purchaser, Hughes; second, whether the contract entered into between appellant and Hughes was for the sale and purchase of said stock or merely an option for the sale thereof. The cause was submitted to the court, sitting as a jury, upon the issues joined and the testimony adduced, which resulted in a verdict that appellee did not warrant the financial condition of the purchaser produced by him, and that appellant accepted said purchaser and entered into a valid contract with him for the sale of said stock of merchandise. Based upon the findings, a judgment was rendered in favor of appellee for a commission in the sum of $237.50.

Appellant's first insistence for reversal is that the undisputed evidence shows that appellee warranted the financial condition of the proposed purchaser, Hughes, to pay cash for the stock of merchandise on a basis of $1.05 on the dollar, according to the invoice price thereof; that when the invoice was about completed, showing the total value of the stock to be about $8,500, said purchaser was unable financially to pay for same. Appellant testified that his contract with appellee provided that he should produce a purchaser able and willing to buy the entire stock of merchandise, and that, when he produced Hughes, appellee informed him that Hughes was A No. 1, and had a "barrel of money." Appellee denied making the statement attributed to him. but, on the contrary, said that when he had found Hughes he and appellant went to Mr. Nowlin, cashier

of the American National Bank, and inquired of him concerning the financial ability of Mr. Hughes, and were informed by the cashier that Hughes was A No. 1, whereupon appellant entered into a written contract with Hughes for the sale of the stock at $1.05 on the dollar, the total amount to be determined by the invoice. These conflicting statements made the issue of whether appellee warranted the financial condition of Hughes a disputed question of fact, and the finding of the court against appellant is conclusive. The finding is supported by evidence of a substantial character.

Appellant's next and last insistence for reversal is that the undisputed evidence shows that the contract was an option to buy, and not a sale of the stock of merchandise; that the purchaser refused to take the stock after the invoice was about completed, and for that reason appellee should not receive a commission under his contract to sell the stock of merchandise. The record reflects that appellee agreed to sell the stock, or at least to produce a purchaser acceptable to appellant, for which services he was to receive the usual real estate commission of 5 per cent. on the first $1,000 and 2½ per cent. on each additional $1,000 shown by an invoice; that appellee produced Hughes, with whom appellant contracted in writing for the sale of the stock. The written contract was lost. According to the oral evidence, establishing the contents thereof, it provided for a sale and purchase of the stock for $1.05 on the dollar, the total price to be determined by invoice. The contract was deposited in the American National Bank, at which time appellant and purchaser each deposited $1,000 therewith, to be forfeited to the other in case he should back out. When the invoice was nearing completion, Hughes declined to pay the balance and take the stock. Appellant accepted the $1,000 forfeit which Hughes had deposited in the bank, and made no effort to enforce the contract. He afterwards refused to pay appellee any commission, for the alleged reason that a sale had not

been effectèd. We think that the evidence shows that a written contract had been entered into between the parties which could have been specifically enforced. Appellant argues that the fact that each had placed a forfeiture in the bank stamps the transaction as an option to buy and not to sell. A forfeit presupposes a contract of sale. If not breached, the forfeit money is applied on the consideration for the sale, and if breached is treated as liquidated damages. An option is the payment of a certain amount for the privilege of buying something within a given time. It is quite clear that "forfeit," as used by the parties to this transaction, was employed in the sense of earnest money to bind the contract for the sale and purchase of the stock, and which should go as liquidated damages to the one without fault in the case the contract was breached. The construction placed upon the contract by the trial court was correct.

The judgment is affirmed.